<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PIER 541 LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> THE CRAB HOUSE, INC., LANDRY'S SEAFOOD RESTAURANTS, INC., BAYPORT RESTAURANT GROUP, INC., JOHN/JANE DOES 1 through 10 (fictitious names whose identities may become known during this lawsuit), AND ABC CORPORATIONS AND OTHER LEGAL ENTITIES 1 through 10 (fictitious names whose identities may become known during this lawsuit), <br><br> *Defendants*. | Civil No.: 19-cv-00437 (KSH) (CLW) <br><br><br><br><br><br> **OPINION** |

**Katharine S. Hayden, U.S.D.J.**

**I.      Introduction**

In this breach of contract action, plaintiff landlord Pier 541 LLC alleges that defendant restaurant Crab House, Inc., its guarantor Bayport Restaurant Group, Inc., and its owner Landry's Seafood Restaurants, Inc. (collectively, "Crab House") owe more than $2.5 million in outstanding rent dating back to 2003.[1]  Specifically, Pier 541 claims that under the express terms of the parties' lease agreement, additional rent obligations were triggered, which gave Pier 541 the right to recoup additional rent if an affiliate of Crab House began operating a competing business within a five mile radius.  According to Pier 541, at the end of calendar year 2002, a restaurant called Chart House became an affiliate and operated a competing business within five miles of Crab House.

---

[1] Crab House notes that it was incorrectly identified in the Amended Complaint as "The Crab House, Inc."

Before the Court are the parties' cross motions for summary judgment. (D.E. 48, 54.) Crab House argues that additional rent obligations were not triggered because Crab House and Chart House were not "affiliates" at the time the parties executed the lease and, even if rent obligations were triggered, Pier 541's claims for damages are either untimely under New Jersey's six-year statute of limitations or barred by the doctrine of equitable estoppel. Pier 541 cross-moves for partial summary judgment, claiming that Crab House is precluded from relying on a statute of limitations defense because it failed to raise such an affirmative defense in its answer. The motions are fully briefed, and the Court decides them without oral argument.

## II.    Factual Background and Procedural History

As alleged in the amended complaint and supported by the parties' statements of undisputed material facts, Crab House leased space at 541 River Road in Edgewater, New Jersey from Metropolitan Edgewater Associates Limited Partnership ("Metropolitan"), one of Pier 541's predecessors, on April 19, 1995 (the "Lease").[2] (D.E. 52, Def.'s 56.1 Stmt. ¶ 1.) The Lease required Crab House to pay a yearly rent in monthly installments for the 20-year term of the Lease. (*Id.* ¶ 3.) Paragraph 4.03 obligated Crab House to make additional rental payments under certain conditions, namely:

> If [Crab House] (and if [Crab House] is a corporation, any parent, subsidiary or affiliated or controlled company of [Crab House] . . . ) shall, directly or indirectly, open, acquire, operate, manage or have any interest in any competing store or business . . . within five (5) miles from the nearest outside boundary of the Entire Premises . . . Landlord shall have the right if permitted by law, during all periods when such competing store or business is open and operating, to additional Fixed Rent at the rate which is fifty percent (50%) of the then rate of Fixed Rent as elsewhere provided in this Lease.  However, any such store of [Crab House] (and if [Crab House] is a corporation, any parent, subsidiary or affiliated or controlled company of [Crab House] . . . ) existing and open for business as of the date of this Lease may continue to be operated, managed, conducted and owned in the same

---

[2] Title to the leased space was transferred to Pier 541 on June 30, 2010. (*Id.* ¶ 7.)

2

>manner as on the date of execution of this Lease without any additional Fixed Rent provided that there is no change in the size or trade name of such other store.

(D.E. 55, Pl.'s Add'l 56.1 Stmt. ¶ 1.) The Lease, which is "governed by the laws of the State of New Jersey," further provided that "[a]ny liability for payments hereunder . . . shall survive the expiration of the Term or earlier termination of the Lease." (*Id.* ¶¶ 3-4.)

Defendant Landry's purchased Crab House on April 18, 1996. (Def.'s 56.1 Stmt. ¶ 8.) Not long after the purchase, a representative of Landry's sent Metropolitan a letter dated July 25, 1996 seeking agreement to the following term: "Landlord shall execute and deliver to Tenant an amendment to the Lease, dated of even date herewith, deleting that certain provision in the Lease prohibiting Tenant from operating or owning a similar business within a certain mile radius of the Premises." (Pl.'s Add'l 56.1 Stmt. ¶¶ 7, 9.) Metropolitan's General Counsel and Vice President testified that he crossed out that term before he counter-signed the letter.[3] (*Id.* ¶ 8.)

Six years later, on May 17, 2002, Landry's purchased the company that owned Chart House Restaurant located in Weehawken, New Jersey. (Def.'s 56.1 Stmt. ¶ 9.)

On October 1, 2015, Pier 541 and Crab House executed an "Amendment to Ground Lease" which, among other things, extended the lease for a five-year period (the "Lease Extension"). (*Id.* ¶ 11.) The Lease Extension does not specifically reference Paragraph 4.03 of the Lease, but includes an acknowledgement that "the Lease, as hereby amended, remains in full force and effect in accordance with its terms." (Pl.'s Add'l 56.1 Stmt. ¶ 5.)

On August 6, 2018, Crab House advised Pier 541 that it would be terminating the Lease effective August 6, 2019, prior to the expiration of the Lease Extension's term.

---

[3] A copy of the signed letter, with the relevant term crossed out, is included in the record. (*See* D.E. 57-4, Schepisi Decl. Ex. D.)

(Def.'s 56.1 Stmt. ¶ 12.)  Pier 541 subsequently sought to recoup approximately $2.5 million in additional rent purportedly owed to it pursuant to Paragraph 4.03 of the Lease on the grounds that Chart House had been operating a competing business within five miles of Crab House since the end of 2002.  (*Id.* ¶ 13.)  The record does not reveal any prior occasions on which Pier 541 sought to recoup additional rent payments from Crab House under Paragraph 4.03.

Crab House refused to pay, and Pier 541 sued in New Jersey state court on November 26, 2018, asserting claims against Crab House for breach of contract, unjust enrichment, conversion, and breach of the implied covenant of good faith and fair dealing. (D.E. 1, 1-1.)  Crab House removed the case to this Court on January 11, 2019, on diversity grounds.  (D.E. 1.)  Pier 541 filed an amended complaint on May 16, 2019, adding an additional breach of contract cause of action for leaving the leased premises in a state of disrepair, which was later dismissed on stipulation of the parties.  (D.E. 11, 20.) Subsequently, the parties stipulated to the dismissal of Pier 541's unjust enrichment, conversion, and breach of the implied covenant of good faith and fair dealing claims (D.E. 75), so the only claim that remains is for breach of contract.

Crab House has now moved for summary judgment on that claim, arguing that it does not owe Pier 541 any additional rent under Paragraph 4.03 because Chart House was not its "affiliate" at the time it executed the Lease. (D.E. 49, Mov. Br.)  Alternatively, Crab House asks this Court to dismiss any claims premised on conduct predating November 26, 2012, as untimely under New Jersey's six-year statute of limitations, and to dismiss any claims premised on conduct postdating the parties' execution of the Lease Extension on October 1, 2015, under the doctrine of equitable estoppel.  (*Id.*)  Pier 541 counters that

Chart House did not have to be Crab House's "affiliate" at the time the Lease was executed for Paragraph 4.03's additional rent obligations to be triggered, and that the equitable estoppel doctrine does not apply. (D.E. 56, Opp. Br.) Pier 541 also cross-moves for partial summary judgment, claiming that Crab House has waived a statute of limitations defense by failing to raise it in the answer. (*Id.*)

### III. Summary Judgment Standard

Summary judgment is proper where the movant demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In ruling on the motion, the Court views the evidence in the light most favorable to the non-moving party and draws all inferences in favor of that party. *Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.*, 835 F.3d 388, 402 (3d Cir. 2016). The non-movant "'must set forth specific facts showing that there is a genuine issue for trial,'" and "'[b]are assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288-89 (3d Cir. 2018) (quoting *D.E. v. Central Dauphin School Dist.*, 765 F.3d 260, 268-69 (3d Cir. 2014)). A factual dispute qualifies as "genuine" if the evidence would permit a reasonable jury to find for the non-moving party. *Id.* at 289. And a fact is "material" if it "might affect the outcome of the suit under the governing law." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013).

Crab House's motion for summary judgment seeks a ruling on whether Paragraph 4.03 of the Lease applies and whether Pier 541 is barred from recovering damages. On the cross-motion, the Court is asked to determine whether Crab House is precluded from raising a statute of limitations defense. As will become clear, these motions do not dispose of the action. Rather,

the Court will issue rulings on whether certain contractual rights and legal defenses are available to the parties.

## IV. Breach of Contract

### A. Standard of Review

As a preliminary matter, the parties appear to acknowledge—and the Court agrees—that New Jersey law governs in this case. Under New Jersey law, "courts should interpret a contract considering 'the objective intent manifested in the language of the contract in light of the circumstances surrounding the transaction.'" *Caldwell Trucking PRP v. Rexon Tech. Corp.*, 421 F.3d 234, 243-44 (3d Cir. 2005) (quoting *SmithKline Beecham Corp. v. Rohm & Haas Co.*, 89 F.3d 154, 159 (3d Cir. 1996)). "The starting point in ascertaining that intent is the language of the contract." *Commc'ns Workers of Am., Local 1087 v. Monmouth County Bd. of Soc. Servs.*, 96 N.J. 442, 452 (1984). Accordingly, "[i]f the language of a contract is plain and capable of legal construction, the language alone must determine the agreement's force and effect." *Manahawkin Convalescent v. O'Neill*, 217 N.J. 99, 118 (2014) (internal citations and quotations omitted). However, courts may "consider all of the relevant evidence that will assist in determining the intent and meaning of the contract." *Conway v. 287 Corp. Ctr. Assocs.*, 187 N.J. 259, 269 (2006). In aid of interpretation, courts may consider "the particular contractual provision, an overview of all the terms, the circumstances leading up to the formation of the contract, custom, usage, and the interpretation placed on the disputed provision by the parties' conduct." *Kearny PBA Local No. 21 v. Town of Kearny*, 81 N.J. 208, 221 (1979).

Where, as here, a contract interpretation is before the Court, "summary judgment is appropriate only where the contractual language is unambiguous—*i.e.*, 'subject to only one reasonable interpretation.'" *Mylan Inc. v. SmithKline Beecham Corp.*, 723 F.3d 413, 418 (3d

Cir. 2013) (quoting *Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co.*, 180 F.3d 518, 521 (3d Cir. 1999)). "If the nonmoving party presents a reasonable alternative reading of the contract, then a question of fact as to the meaning of the contract exists which can only be resolved at trial." *Newport Assocs. Dev. Co. v. Travelers Indem. Co.*, 162 F.3d 789, 792 (3d Cir. 1998). Whether a contractual provision is ambiguous is "an issue of law afforded plenary review." *Sumitomo Mach. Corp. of Am. v. AlliedSignal, Inc.*, 81 F.3d 328, 332 (3d Cir. 1996).

B. Discussion

Here, Crab House claims that the term "affiliated company" in Paragraph 4.03 refers only to entities that were affiliates of Crab House at the time the parties executed the Lease and, because Chart House was not an affiliate of Crab House in 1995 when the parties executed the Lease, Pier 541's breach of contract claim fails as a matter of law. In support of its argument, Crab House relies on a case from the New York Court of Appeals citing with approval an unpublished case from this District, that purportedly stands for the proposition that "[a]bsent explicit language demonstrating the parties' intent to bind future affiliates of the contracting parties, the term 'affiliate' includes only those affiliates in existence at the time that the contract was executed." *Ellington v. EMI Music, Inc.*, 24 N.Y.3d 239, 246 (N.Y. 2014); *see Budget Rent A Car Sys., Inc. v. K&T, Inc.*, Civ. No. 05-3655, 2008 WL 4416453, at *4 (D.N.J. Sept. 24, 2008) (Martini, J.) ("[N]othing in the License Agreement suggests that the parties intended the License Agreement to extend to future corporate parents or affiliates."). Crab House contends that because Paragraph 4.03 "refers to an 'affiliated or controlled company" but "says nothing about a *future* affiliated or controlled company," the parties did not intend for Paragraph 4.03 to extend to future affiliates of Crab House. (Mov. Br. at 8.)

This argument fails to recognize that the Lease *does* contain language suggesting that the

7

parties intended Paragraph 4.03 to extend to future affiliates of Crab House. Beginning with the plain language of the Lease, Paragraph 4.03 contains two separate provisions. The first imposes an additional rent obligation on Crab House under certain circumstances—*i.e.*, if a "parent, subsidiary or affiliated or controlled company" of Crab House opens, acquires, operates, manages, or has any interest in a competing business within five miles of Crab House. The second provision carves out an exception to that additional rent obligation, which states explicitly that the additional rent obligation does not apply to "any parent, subsidiary or affiliated or controlled company of [Crab House] . . . *existing and open for business as of the date of this Lease . . .* " (Pl.'s 56.1 Stmt. ¶ 1 (emphasis added).) An exception to the additional rent obligation for affiliates "existing and open for business" as of the date of the Lease would have only been necessary if the obligation itself was intended to apply to Crab House's future affiliates. Crab House cannot read the first provision of Paragraph 4.03 in a vacuum, and its position would render meaningless the explicit language of Paragraph 4.03's exception. *See Newark Publishers' Ass'n v. Newark Typographical*, 22 N.J. 419, 426 (1956) ("Words and phrases are not to be isolated but related to the context and the contractual scheme as a whole, and given the meaning that comports with the [parties'] probable intent and purpose."); *see also Penske Logistics, Inc. v. KLLM, Inc.*, 285 F. Supp. 2d 468, 474 (D.N.J. 2003) ("Under the principles of contract interpretation, a contract should not be given an interpretation which renders a term or terms superfluous or meaningless.").[4]

      The Lease's plain language runs counter to Crab House's interpretation, and the parties' conduct provides further support. As Pier 541 points out, when Landry's acquired Crab House

---

[4] Having so ruled, the Court need not address Pier 541's remaining arguments regarding the plain language of the Lease.

in 1996, it sought to have its then-landlord Metropolitan execute a letter agreement removing Paragraph 4.03 from the Lease. Metropolitan did not agree. (*See* Pl.'s Add'l 56.1 Stmt. ¶¶ 7-9.) The parties do not appear to dispute that when they executed the Lease, Crab House had no affiliates operating a competing business within a five-mile radius. Had the parties intended for Paragraph 4.03 to extend only to affiliates of Crab House in existence at the time the Lease was executed, Paragraph 4.03 would not have been triggered, Landry's would have had nothing to gain by removing Paragraph 4.03 from the Lease when it acquired Crab House in 1996, and Metropolitan would have had no legitimate basis to refuse the removal. Accordingly, the parties' course of conduct illuminates what is already clear from the plain language of the Lease: their mutual understanding that Paragraph 4.03 would be triggered if a future affiliate of Crab House operated a competing business. *See Rodriguez-Ocasio v. Midland Credit Management, Inc.*, Civ. No. 17-3630, 2021 WL 3758077, at *5 (D.N.J. Aug. 25, 2021) (Salas, J.) ("New Jersey law permits the use of extraneous evidence to illuminate the meaning of otherwise clear text.").

In light of the foregoing, the Court rejects Crab House's position that it avoids liability for extra rent under Paragraph 4.03 of the Lease because Chart House was not its "affiliate" at the time the parties executed the Lease, and its motion for summary judgment on that basis is denied.

**V.      Timeliness of Pier 541's Claims**

Crab House next argues that the Court should find as a matter of law that all damages accrued prior to November 26, 2012—six years before Pier 541 filed its complaint in this action—are untimely under New Jersey's six-year statute of limitations. Pier 541 counters that the Court should instead grant partial summary judgment in its favor because Crab House failed to raise this affirmative defense in its answer and so waived it.

9

### A. Standard of Review

Under New Jersey law, "[e]very action at law . . . for recovery upon a contractual claim or liability, express or implied . . . shall be commenced within 6 years next after the cause of any such action shall have accrued." N.J.S.A. 2A:14–1. "[A] cause of action is deemed to accrue for statute of limitations purposes when the potential plaintiff knows of his or her injuries and of facts sufficient to attribute those injuries to the fault of another." *Peck v. Donovan*, Civ. No. 07-5500, 2009 WL 900068, at *2 (D.N.J. Mar. 31, 2009) (Linares, J.) (quoting *Cruz v. City of Camden*, 898 F.Supp. 1100, 1106 (D.N.J. 1995)). Accordingly, a cause of action for breach of contract accrues when the breach occurs. *See Hampton House Assocs., LLC v. Lowe's Home Centers Inc.*, Civ. No. 12-0110, 2012 WL 13034157, at *3 (D.N.J. May 1, 2012) (Walls, J.).

### B. Discussion

The Court begins with Pier 541's cross-motion for partial summary judgment, in which Pier 541 argues that Crab House's statute of limitations defense was "irreversibly waived" when it failed to raise the affirmative defense in its answer. (Opp. Br. at 10.) The Court disagrees. While Pier 541 is correct that the statute of limitations is an affirmative defense which "parties should generally assert . . . early in litigation," there is "no hard and fast rule limiting defendants' ability to plead the statute of limitations," and district courts are "well within the bounds of [their] discretion to allow defendants to plead the statute of limitations even if they had not done so in their initial answers." *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 506 (3d Cir. 2006) (internal citations and quotations omitted). Indeed, affirmative defenses can be raised by motion at any time, so long as the plaintiff suffers no prejudice from the delay. *See Charpentier v. Godsil*, 937 F.2d 859, 863-64 (3d Cir. 1991). The Court cannot ascertain—and Pier 541 has not argued that it suffered—any prejudice from Crab House's failure to assert a statute of limitations

affirmative defense in its answer. Accordingly, a statute of limitations defense remains available to Crab House.

Crab House argues—and Pier 541 does not dispute—that the Lease is an installment contract because it obligated Crab House to pay its rent in monthly installments. According to Crab House, a new cause of action accrued from the date of each missed monthly payment, and Pier 541 can only recover for outstanding payments that became due less than six years before the filing of the complaint in this action. The problem with that argument, however, is that neither party has addressed its practical application. Indeed, neither party has meaningfully addressed when additional rent payments would have fallen due under Paragraph 4.03 if it binds Crab House—*i.e.*, on a monthly basis when Crab House's ordinary rent payments were due and payable, or otherwise. Accordingly, the issue is not ripe for summary disposition.

## VI. Equitable Estoppel

Crab House next argues that, under the doctrine of equitable estoppel, the Court should dismiss any claims for damages that postdate the October 1, 2015, Lease Extension. According to Crab House, "Pier 541 sat on its hands for years without ever mentioning its supposed rights under Paragraph 4.03," and Crab House would not have executed the Lease Extension had it known that Pier 541 would demand additional rent under Paragraph 4.03. (Mov. Br. at 11-12.) In opposition, Pier 541 contends that Crab House has failed to establish any misrepresentations by Pier 541 or reliance on those misrepresentations to its detriment, both of which are necessary for a prima facie case of equitable estoppel.

### A. Standard of Review

Equitable estoppel is "an equitable doctrine, founded in the fundamental duty of fair dealing imposed by law, that prohibits a party from repudiating a previously taken position when

another party has relied on that position to his detriment." *Casamasino v. City of Jersey City*, 158 N.J. 333, 354 (1999) (quoting *State v. Kouvatas*, 292 N.J. Super. 417, 425 (App. Div. 1996)).  The equitable estoppel doctrine precludes a party "from asserting rights which might perhaps have otherwise existed . . . as against another person, who has in good faith relied upon such conduct and has been led thereby to change his position for the worse." *Highway Trailer Co. v. Donna Motor Lines, Inc.*, 46 N.J. 442, 449 (1966) (internal citations and quotations omitted).  The burden of proving equitable estoppel "is on the party invoking the doctrine." *Capitalplus Equity, LLC v. Prismatic Dev. Corp.*, Civ. No. 07-321, 2008 WL 2783339, at *3 (D.N.J. July 16, 2008) (Walls. J.).

To establish the elements of equitable estoppel, the movant must generally establish: "(1) a knowing misrepresentation by another party; (2) which it reasonably relied upon; (3) to its detriment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 532 (D.N.J. 2000); *see O'Malley v. Dep't of Energy*, 109 N.J. 309, 317 (1987) ("The essential elements of equitable estoppel are a knowing and intentional misrepresentation by the party sought to be estopped under circumstances in which the misrepresentation would probably induce reliance, and reliance by the party seeking estoppel to his or her detriment.").  However, a party may also invoke the equitable estoppel doctrine if it reasonably relied upon certain "conduct, inaction . . . , silence or omission[s]" of the non-moving party. *Fairken Assoc. v. Hutchin*, 223 N.J. Super. 274, 280 (App. Div. 1987); *see Est. of Conroy v. Cimino,* Civ. No. 18-14184, 2020 WL 7074254, at *5 (D.N.J. Dec. 3, 2020) (Kugler, J.) (movants were required to demonstrate that they relied on plaintiff's "inconsistent conduct and changed their position for the worse").  "A party's reliance is reasonable if 'the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading.'" *Messa*, 122 F.Supp.2d at 532 (quoting *Heckler v. Cmty.*

12

*Health Servs.*, 467 U.S. 51, 59 (1984)).

### B. Discussion

Here, Crab House has not proven as a matter of law that Pier 541 should be equitably estopped from recovering damages premised on claims postdating the Lease Extension. Assuming arguendo that Pier 541's silence as to its intention to recoup additional rent under Paragraph 4.03 establishes the first prong of the equitable estoppel analysis, and that Crab House relied on Pier 541's silence to its detriment, Crab House has not demonstrated its reliance was reasonable.  As Pier 541 points out, Paragraph 4.03 "has been in existence since the Lease was originally signed," and the parties' negotiations on nullifying that provision demonstrate that they knew about it.  (*See* Op. Br. at 12.)  Further, the Lease Extension provided that the Lease "remain[ed] in full force and effect in accordance with its terms."  (Pl.'s Add'l 56.1 Stmt. ¶ 5.)  In short, Crab House has failed to make a showing that the doctrine applies, and its motion for summary judgment on the basis of equitable estoppel is denied.

### VII.  Conclusion

For the foregoing reasons, the parties' motions for summary judgment are denied.  An appropriate order will issue.

/s/ Katharine S. Hayden
Dated: September 28, 2021                             Katharine S. Hayden, U.S.D.J.